*>. AO 241    (Rev. 5/85)

## PETITION UNDER 28 USC § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# 04 12694 DPW

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 USC § 2255, in the federal court which entered the judgment.)

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*Instructions - Read Carefully*

(1) This petition must be legibly handwritten or typewritten, and signed by the petitioner under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute form AO 240 or any other form required by the court, setting forth information establishing your inability to pay the costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If your personal account exceeds $ _____ , you must pay the filing fee as required by the rules of the district court.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition is fully completed, the original and at least two copies must be mailed to the Clerk of the United States District Court whose address is

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District _Massachusetts_ | |
|---|---|---|
| Name _Gregory Lambert_ | Prisoner No. _W81343_ | Case No. |
| Place of Confinement _MCI-Shirley, Medium Security_ | | |

Name of Petitioner (include name under which convicted)        Name of Respondent (authorized person having custody of petitioner)

_Gregory Lambert_            v. _Michael A. Thompson, Superintendent_

The Attorney General of the State of: _Massachusetts_

## PETITION

1.  Name and location of court which entered the judgment of conviction under a~~MAGISTRATE JUDGE~~ _Ouen_
    _Hampden County Superior Court, Springfield, Massachusetts_

2.  Date of judgment of conviction _January 29, 2003_

3.  Length of sentence _5 Years (one count); from + after 2½ Years (3 counts)_

4.  Nature of offense involved (all counts)
    _1 Count of trafficking in Cocaine; 2 Counts of distribution of Cocaine; 1 Count of distribution of Cocaine in a School Zone._

5.  What was your plea?  (Check one)
    (a) Not guilty        ☒
    (b) Guilty            ☐
    (c) Nolo contendere   ☐
    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have?  (Check one)
    (a) Jury        ☐
    (b) Judge only  ☒

7.  Did you testify at the trial?
    Yes ☐   No ☒

8.  Did you appeal from the judgment of conviction?
    Yes ☒   No ☐

RECEIPT # _61034_
AMOUNT $ _5_
SUMMONS ISSUED _N/A_
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _XXX_
DATE _12/23/04_

(2)

AO 241    (Rev. 5/85)

9.  If you did appeal, answer the following:

(a)  Name of court  *Massachusetts Appeals Court*

(b)  Result  *Judgments affirmed*

(c)  Date of result and citation, if known  *May 20, 2004.  808 N.E. 2d 1257 (table)*

(d)  Grounds raised  *Sufficiency of the evidence.*

(e)  If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1)  Name of court  *Supreme Judicial Court of Massachusetts*

(2)  Result  *Application for further appellate review denied.*

(3)  Date of result and citation, if known  *June 30, 2004.  810 N.E. 2d 1229 (table)*

(4)  Grounds raised  *Sufficiency of the evidence.*

(f)  If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1)  Name of court

(2)  Result

(3)  Date of result and citation, if known

(4)  Grounds raised

10.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes  ☐    No  ☑

11.  If your answer to 10 was "yes," give the following information:

(a)  (1)  Name of court

(2)  Nature of proceeding

(3)  Grounds raised

(3)

AO 241    (Rev. 5/85)

      **(4)** Did you receive an evidentiary hearing on your petition, application or motion?
            Yes  ☐    No  ☐

      **(5)** Result

      **(6)** Date of result

  **(b)** As to any second petition, application or motion give the same information:

      **(1)** Name of court

      **(2)** Name of proceeding

      **(3)** Grounds raised

      **(4)** Did you receive an evidentiary hearing on your petition, application or motion?
            Yes  ☐   No  ☐
      **(5)** Result

      **(6)** Date of result

  **(c)** Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
      **(1)** First petition, etc.      Yes  ☐   No  ☐
      **(2)** Second petition, etc.    Yes  ☐   No  ☐

  **(d)** If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12.   State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
      CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A.  Ground one: The evidence was insufficient to support the Convictions.

Supporting FACTS (state *briefly* without citing cases or law):

The Commonwealth never presented evidence that Mr. Lambert was a drug dealer known as "Junior," and Mr. Lambert was not present during any of the distributions by people other than him. Further, the evidence seized in an apartment where drugs + paraphernalia were found does not support the conviction for trafficking where the evidence did not demonstrate that Mr. Lambert had any connection with or knowledge of the cocaine found in the apartment.

B.  Ground two:

Supporting FACTS (state *briefly* without citing cases or law):

AO 241   (Rev. 5/85)

C.   Ground three:

Supporting FACTS (state *briefly* without citing cases or law):

D.   Ground four:

Supporting FACTS (state *briefly* without citing cases or law):

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
        Yes   ☐   No   ☑

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
        (a)   At preliminary hearing   *Thomas F. McGuire*
                                                    *1365 Main Street*
        (b)   At arraignment and plea   *Springfield, MA 01103*

                                                    *Same*

(6)

AO 241   (Rev. 5/85)

(c) At trial   *Same*

(d) At sentencing   *Same*

(e) On appeal   *Thomas C. Foley*
*PO Box 2187*
*South Hamilton, MA 01982*

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
     Yes  ☑  No  ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
     Yes  ☐  No  ☑
     (a)  If so, give name and location of court which imposed sentence to be served in the future:

     (b)  Give date and length of the above sentence:

     (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
     Yes  ☐  No  ☑

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_____
Date

_____
Signature of Petitioner

(7)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GREGORY LAMBERT,<br>Petitioner.<br><br>v.<br><br>MICHAEL A. THOMPSON,<br>SUPERINTENDENT OF<br>MCI-SHIRLEY,<br>MEDIUM SECURITY<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Addendum To Petition Under<br>28 U.S.C. § 2254 For Writ Of<br>Habeas Corpus |

Now comes the Petitioner, Gregory Lambert, and submits this Addendum

to his Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus, with respect to

additional facts that support Petitioner's grounds for relief.

ADDITIONAL FACTS THAT SUPPORT
PETITIONER'S GROUNDS FOR RELIEF.[1]

The Commonwealth's Case:

May 24, 1999 (Indictment numbers 99-1905 and 99-1906, both of which
were dismissed after allowance of required findings of not guilty).

In May 1999, Patrolman Marcus Lawrence, while working with the

narcotics bureau, was investigating an individual named "Junior."[2]  (I/18).  He first

contacted Junior on May 24, 1999 via cell phone.  (I/19).  Patrolman Lawrence,

acting undercover, told Junior that he obtained Junior's cell number through some

individuals whom he knew Junior was familiar with.  (I/20).  After arranging to

---

[1] The Record Appendix to the Petitioner's brief to the Massachusetts Appeals
Court shall be cited herein as (R.A. ); citations to the trial transcript shall be cited
by transcript volume and page, e.g., (I/10) and (II/10).

buy to $50 pieces of crack cocaine from Junior, he was told by Junior to be in the area around 221 Orange Street in Springfield in 20 minutes. (I/21-22).

Upon arriving at 221 Orange Street in his undercover vehicle, Patrolman Lawrence observed a woman walk down the stairs of 221 Orange Street and past his undercover vehicle. (I/25). She then came back and engaged him in a brief conversation before getting in the car. (I/25). The woman asked, "Is that you?" and Patrolman Lawrence responded, Yes." (I/26). The woman mentioned something about seeing the police in the area earlier that day, and suggested driving to the rear of 221 Orange Street. (I/26).

At about that time Patrolman Lawrence noticed the defendant, Gregory Lambert, on the second floor porch of 221 Orange Street, whom he believed was watching the woman as she approached and entered his car. (I/27, 29). Sergeant Thomas Meleady, who was conducting surveillance, also noticed Mr. Lambert on the second floor porch, coming and going in and out of the second floor apartment. (I/97-99). The woman went back inside the house as Patrolman Lawrence drove to the rear of 221 Orange Street, at which time Patrolman Lawrence noticed the defendant watching him, and they made eye contact. (I/28, 29).

Parked now in the rear of 221 Orange Street, Patrolman Lawrence could not see the defendant any longer. (I/29). The multi-family house had an upstairs apartment and a downstairs apartment. (I/30). The woman came down the back

---

[2] There was no evidence presented as to the identity of "Junior." Although the indictments claim that Mr. Lambert is "also known as 'Junior,'" there was no evidence presented at trial that Mr. Lambert is "Junior."

steps and directed him to get out of the car and up onto the back porch. (I/29-30).

The woman spit two individually wrapped rocks of crack cocaine out of her mouth

and handed them to him, for which he paid her $50 apiece in prerecorded "buy

money." (I/31). The woman gave him a card – Junior's card with his cell phone

number – so he could call again for more crack. (I/32).

During this time behind the house, Sergeant Meleady continued to observe

Mr. Lambert on the second floor porch. (I/98-100). Neither officer, however,

ever observed the woman enter or leave the second floor apartment. (I/82). Even

after Patrolman Lawrence left, Sergeant Meleady continued to observe Mr.

Lambert going in and out of the apartment and the second floor porch. (I/101,

122).

Later drug analysis indicated that the rocks were crack cocaine. (I/35).

(I/35).

### May 25, 1999 (Indictment number 99-1904, which resulted in a finding of not guilty).

On May 25, Patrolman Lawrence called Junior again and arranged to buy

three rocks of crack cocaine. (I/37). However, this time Junior told him to drive

to 124 Mass. Avenue. (I/38). Patrolman Lawrence was left with the impression

that Junior himself would be there to make the delivery. (I/38).

About 20 minutes later Patrolman Lawrence arrived, and a young black

male came out of 124 Mass. Ave. and got into his car. (I/40, 42). This man, who

was later identified by the police as Dedlon Gelin, sold Patrolman Lawrence three

rocks of what was later determined to be crack cocaine. (I/44-45). Significantly, the police did not see Mr. Lambert at that time on that day. (I/83).

> June 1, 1999 (Indictment number 99-1903, which resulted in a guilty finding).

One June 1, 1999, Patrolman Lawrence again telephoned Junior by cell phone and arranged to buy four rocks or crack cocaine. (I/52). Twenty minutes later he pulled up to 124 Mass. Ave with pre-recorded buy money and was again approached by Dedlon Gelin. (I/52-53). Dedlon Gelin got in the car and asked him to drive to the Dunmoreland-Westford Circle cross-street, where they exchanged the four rocks of crack for the pre-recorded buy money. (I/53-54). At some point Dedlon Gelin gave Patrolman Lawrence another business card for "Junior." (I/67). Once again, the police did not see Mr. Lambert at that time on that day. (I/83-84).

At some time later that same day, Sergeant Meleady waited until Dedlon Gelin, Mr. Lambert, and Steve Charles took a taxi from 124 Mass. Ave to 221 Orange Street, then stopped the taxi and arrested Dedlon Gelin. (I/102-105, 129-132). 2They also ascertained Mr. Lambert's identity, but then let him go. (I/105, 134-135). Dedlon Gelin was bailed out later that evening. (I/105, 106).

> June 2, 1999 (Indictment number 99-1902, which resulted in a guilty finding).

On June 2, Patrolman Lawrence again telephoned Junior, and this time arranged to buy five rocks of crack cocaine. (I/56-57). He drove to 124 Mass. Ave. with pre-recorded buy money and was once again joined by Dedlon Gelin, then they again drove to the intersection of Dunmoreland and Westford Circle,

where they exchanged the crack cocaine for the money. (I/62, 64). Patrolman Lambert testified that the voice on the telephone was not that of Dedlon Gelin. (I/64). Once again, significantly, the police did not see Mr. Lambert on that day at that time. (I/85).

> June 28, 1999 Indictments 99-1900 and 99-1901, which both resulted in guilty findings).

On June 28, 1999, Officer Aristides Cassillas was conducting surveillance of 124 Mass. Ave. (which is 760 feet from a school) when he saw a white Acura pull up in front, then saw Mr. Lambert (who was driving) and Dedlon Gelin exit the Acura and enter the multi-family house. (II/23, 37, 99, 101). At some point thereafter (there was no testimony how long after), Patrolman Lawrence contacted Junior via cell phone and arranged to buy another six pieces of crack cocaine. (I/70). He drove to 124 Mass. Ave. with pre-recorded buy money, was approached by Dedlon Gelin, drove to an area where Westford Circle meets Westford Avenue (around the corner from 124 Mass. Ave.), and made the exchange of crack for cash with Dedlon Gelin. (I/71-72). This time, however, Patrolman Lawrence signaled to other officers, who stopped the vehicle and arrested Dedlon Gelin. (I/71-72). Significantly, once again the police did not see Mr. Lambert at the time of this drug purchase. (I/89-90).

After Dedlon Gelin's arrest, Sergeant Meleady determined to secured 124 Mass. Ave. pending issuance of a search warrant. (I/107-108). He went in the rear door, up the stairs toward the third floor, where he saw Mr. Lambert exit the door to the third floor apartment and start coming down the stairs. (I/108). He

pat-frisked Mr. Lambert for weapons and hand-cuffed him while other officers secured the apartment, which contained only three rooms: two bedrooms and a kitchen.  (I/109, 111).  Steve Charles and another person were also secured inside the apartment.  (I/109).

Some time later, after Sergeant Meleady completed the search warrant, he returned with it and several officers, and searched the third floor apartment. (I/111-112).  In the front bedroom, which contained a bed, a dresser, some men's clothing and shoes, and was described as being in "disarray," the police recovered Mr. Lambert's wallet on the dresser.  (I/89, 113, 115).  A picture of Mr. Lambert and a female, as well as one of Junior's cards, was found inside the wallet.  (I/113-114).   A radio scanner was found inside the dresser in the front bedroom. (II/8,11).  The police also recovered a bag with a single chunk of crack cocaine, which was found inside the pocket a pair of pants hanging from a hook on the back of the closet door.  (II/91).  (II/92).  Four small rocks of crack were found inside a boot that was located in the closet.  (II/82).  After moving the dresser and pulling back the carpet, the police also found a black sock containing a rock-like item containing 85 grams of cocaine with a purity of 65.2%.  (II/53, 55-57, 73). Analysis admitted – 85 grams, 65.2% cocaine.  A police expert testified that that amount of crack cocaine was not consistent with personal use.  (II/63).

In the kitchen the police found some baggies and two digital scales.  (II/8, 10).  In the back bedroom, which contained various pieces of bedroom furniture, the police found some personal papers belonging to Steve Charles.  (II/13).  A

6

firearm was recovered from the back bedroom, as well as nine bags of powder found inside the pocket of a shirt hanging inside the closet. (I/136-137).

The defense.

The defense was that the police presented no evidence that Mr. Lambert was Junior, and no evidence that Mr. Lambert had ever distributed or engaged in any joint venture to distribute drugs. (II/145-149). The defense further argued that the only evidence that Mr. Lambert had any connection with the drugs recovered from 124 Mass. Ave. was that he was seen in the apartment, and his wallet was on top of the dresser in the front bedroom, which, the defense argued, falls far short of proving that Mr. Lambert had any connection to the drugs found hidden in that bedroom and in the apartment. (II/146-149).

Respectfully submitted,
Gregory Lambert,
by his attorney,

December ___, 2004

Thomas C. Foley,
USDC No. Pending
Attorney at Law
P.O. Box 2187
South Hamilton, MA 01982
(978) 239-7003

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY LAMBERT, ) | **04 12694 DPW** |
| Petitioner. ) | |
| ) | Legal Memorandum In Support Of |
| v. ) | Petition Under 28 U.S.C. §2254 |
| ) | For Writ Of Habeas Corpus |
| MICHAEL A. THOMPSON, ) | |
| SUPERINTENDENT OF ) | |
| MCI-SHIRLEY, ) | |
| MEDIUM SECURITY ) | |
| Respondent. ) | |

Now comes the Petitioner, Gregory Lambert, and submits this Legal Memorandum In

Support of his Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus.

## LEGAL ARGUMENT[1]

I.    THE EVIDENCE WAS NOT SUFFICIENT TO PROVE THAT MR. LAMBERT
TRAFFICKED IN OR DISTRIBUTED ANY COCAINE, WHERE THERE WAS NO
EVIDENCE THAT HE WAS "JUNIOR"; HE WAS NEVER SEEN DISTRIBUTING
COCAINE OR ASSISTING ANOTHER IN DISTRIBUTING COCAINE; AND THE
EVIDENCE DID NOT DEMONSTRATE THAT MR. LAMBERT HAD ANY
CONNECTION WITH OR KNOWLEDGE OF THE COCAINE FOUND IN THE
APARTMENT AT 124 MASS. AVENUE.

The evidence presented to the jury in this case was insufficient to meet the Jackson v.

Virginia standard so as to support convictions for distribution of cocaine, trafficking in

cocaine, or trafficking in cocaine within 1,000 feet of a school.  See Jackson v. Virginia, 443

U.S. 307 (1979)(habeas corpus petitioner entitled to habeas corpus relief if it is found that

upon the evidence adduced at trial no rational trier of fact could have found proof of guilt

beyond a reasonable doubt).  In this case, where the evidence was not sufficient to prove the

---

[1] The Record Appendix to the Petitioner's brief to the Massachusetts Appeals Court shall be
cited herein as (R.A. ); citations to the trial transcript shall be cited by transcript volume and
page, e.g., (I/10) and (II/10).

1

indictments upon which Mr. Lambert was ultimately found guilty, the trial court erred in denying Mr. Lambert's motions for required findings of not guilty at the close of the Commonwealth's case. (II/126-144).

A.    The Evidence Was Not Sufficient To Prove That Mr. Lambert Distributed Cocaine on June 1, 2003 or June 2, 2003.

Although this was a bench trial and no jury instructions were discussed, where Mr. Lambert was not seen with Dedlon Gelin on June 1 or June 2 at the times when Dedlon Gelin distributed the several rocks of crack cocaine to Patrolman Lawrence, the Commonwealth's case against Mr. Lambert for distributing the cocaine on those two days must be based on the theory that Mr. Lambert was guilty of distribution as a joint venturer with Dedlon Gelin. As such, the Commonwealth was required to prove that Mr. Lambert was not only present when the crimes were committed on June 1 and June 2, but that he also knew that the crimes were being committed, and that he was willing to assist in carrying out those crimes. See Commonwealth v. Sabetti, 411 Mass. 770, 779 (1992); Commonwealth v. Maillet, 54 Mass. App. Ct. 910, 911 (2002). Put another way, he must have been present, shared the mental state required for the crime, and he must have "assisted the principal intentionally in its commission." Commonwealth v. Amaral, 13 Mass. App. Ct. 238, 241-242 (1982). Mere evidence of association with the principal is not sufficient and does not "justify an inference that [he also] participated in [its] commission." Commonwealth v. Chinn, 6 Mass. App. Ct. 714, 717 (1978). The defendant needs to have agreed to participate and take some action in a meaningful way. Commonwealth v. Springer, 49 Mass. App. Ct. 469, 472-474 (2000).

In this case the Commonwealth's evidence of a joint venture falls far short of satisfying the Jackson v. Virginia standard, because in this case there was simply no evidence that Mr.

Lambert had anything to do with Dedlon Gelin's distribution of cocaine, where Mr. Lambert was not present on June 1 or June 2 when Dedlon Gelin distributed the cocaine, nor was there any evidence that Mr. Lambert assisted Dedlon Gelin in any way or intended to assist Dedlon Gelin in any way.

On June 1, 1999, Patrolman Lawrence telephoned Junior by cell phone and arranged to buy four rocks of crack cocaine, then pulled up to 124 Mass. Avenue 20 minutes later with pre-recorded buy money and was approached solely by Dedlon Gelin, who asked him to drive to the Dunmoreland-Westford Circle cross-street, where they exchanged the four rocks of crack for the pre-recorded buy money. (I/52-54). Significantly, the police did not see Mr. Lambert at that time on that day. (I/83-84).

Only some time later did Dedlon Gelin, Mr. Lambert, and Steve Charles take a taxi together from 124 Mass. Avenue to 221 Orange Street, which the police stopped in order to arrest Dedlon Gelin, but let Mr. Lambert go after ascertaining his identity. (I/102-105, 129-135). There was simply no evidence that Mr. Lambert had engaged in any wrongdoing on that day, when his only involvement with the drug distributor – Dedlon Gelin – was to take a taxi with Dedlon Gelin and Steve Charles from 124 Mass. Avenue to 221 Orange Street sometime (there was no testimony as to how long after the undercover buy the taxi was trailed and stopped by the police) later that day.

Similarly, on June 2, Patrolman Lawrence again telephoned Junior, and after arranging to buy five rocks of crack cocaine, drove to 124 Mass. Avenue with pre-recorded buy money and was once again joined by Dedlon Gelin, then they again drove to the intersection of Dunmoreland and Westford Circle, where they again exchanged the crack cocaine for the

money. (I/62, 64). This time, the police did not see Mr. Lambert at all during the entire day. (I/85).

There is even less evidence of Mr. Lambert's involvement in this case than there was in cases that have been reversed on appeal for insufficient evidence. For example, in Commonwealth v. Saez, 21 Mass. App. Ct. 408, 411-412 (1986), the Commonwealth produced evidence that the defendant was with the principal during an alleged drug transaction, and that he looked up and down the street during the transaction. The court held that this evidence was insufficient to support a conviction based on joint venture because the evidence merely showed that the defendant associated himself with an individual whom the defendant may have known to be in possession of heroin. Id. The additional evidence of the defendant looking up and down the street during the alleged drug transaction left too much to conjecture or surmise. Id. at 413, citing Berry v. Commonwealth, 393 Mass. 793, 795-796 (1985).

In this case, the Commonwealth did not have any evidence of Mr. Lambert giving such little alleged aid as looking up and down the street; rather, in this case the Commonwealth produced no evidence that Mr. Lambert was even in the vicinity at the time of the June 1 and June 2 distributions, or that Mr. Lambert had any idea these drug distributions were taking place, much less produce any evidence that Mr. Lambert assisted or intended to assist Dedlon Gelin.

The fact that Mr. Lambert was later seen on June 1 leaving 124 Mass. Avenue and getting into a taxi with Dedlon Gelin and Steve Charles adds nothing to the Commonwealth's case. There was no evidence that Mr. Lambert was inside 124 Mass. Avenue when Dedlon Gelin exited the multi-family house and made the distribution to Patrolman Lawrence. There

was no evidence that Mr. Lambert, Dedlon Gelin and Steve Charles got into the taxi together immediately after the distribution, which could at least provide the basis for an attempt to argue that such evidence would tend to show that Mr. Lambert was in close contact and association with Dedlon Gelin at the time of the distribution. Furthermore, the Commonwealth presented no evidence of the source of the cocaine that Dedlon Gelin distributed to Patrolman Lawrence, and certainly no evidence that Mr. Lambert had any idea that Dedlon Gelin was distributing cocaine from 124 Mass. Avenue, 221 Orange Street, or anywhere else for that matter.

The Commonwealth attempted, unsuccessfully (each attempt was objected to and sustained), to portray Mr. Lambert as the so-called "Junior" who was allegedly responsible for all of the indictments in this case. The trial court also correctly determined that the Commonwealth's evidence was wholly lacking on the indictments based on the May 24 and May 25 distributions (again, by people other than Mr. Lambert). But the trial court erroneously denied Mr. Lambert's motions for required finding for the indictments based on the June 1 and June 2 distributions. In doing so the trial court clearly erred, therefore convictions on the two indictments based on the June 1 and June 2 distributions (Nos. 99-1902 and 99-1903) must be reversed and the indictments dismissed. See, e.g., <u>Commonwealth v. Caterino</u>, 31 Mass. App. Ct. at 690 (conviction reversed and indictment dismissed where evidence insufficient to prove distribution of cocaine).

B.    <u>The Evidence Was Not Sufficient To Prove That Mr. Lambert Trafficked in Cocaine On June 28, 2003</u>.

The evidence put forward by the Commonwealth to support its indictment alleging that Mr. Lambert trafficked in cocaine on June 28, 1999 boiled down to nothing more than the

evidence found during the search of the third floor apartment at 124 Mass. Avenue. However, entirely lacking is any evidence that Mr. Lambert had any interest, possessory or otherwise, in the third floor apartment or the contents of that apartment, where the only evidence tying Mr. Lambert to that apartment was that he had been in the apartment on two or more occasions, including the day of the search, and that his wallet was found on top of a dresser in one of the bedrooms. Wholly lacking was any evidence that Mr. Lambert lived in the apartment; that he rented or owned the apartment; that any of the men's clothing found in the apartment belonged to him or was approximately his size clothing. Indeed, there is not sufficient evidence to suggest that Mr. Lambert even knew that the hidden items found by the police that is evidence that someone (perhaps Dedlon Gelin or Steve Charles) have may have been trafficking were even in the apartment, where all of the items were hidden and kept out of view of any visitors. See Commonwealth v. Navarro, 39 Mass. App. Ct. 161, 167-170 (1995) (even where it was reasonable to infer that the defendant was aware of the presence of drugs in the apartment, evidence nevertheless insufficient to prove constructive possession where the apartment was in someone else's name, no personal papers of the defendant nor any of her clothing were found in the apartment despite fact that defendant had in her possession 27 glassine bags identical to the bags found in the apartment). In these circumstances, the Commonwealth's evidence falls far short of satisfying the Jackson v. Virginia standard, and the conviction on the trafficking indictment (No. 99-1900) must be reversed and the indictment must be dismissed. See, e.g., Commonwealth v. Caterino, 31 Mass. App. Ct. at 690 (conviction reversed and indictment dismissed where evidence insufficient to prove constructive possession of drugs found in apartment).

One's possession of an object depends upon a finding of his ability and intention to exercise dominion and control over it. See Commonwealth v. Rivera, 31 Mass. App. Ct. 554, 556 (1991). "One may be found to be in possession of an object when he has the ability and intention to exercise dominion and control over it . . . . Such possession may be constructive rather than actual; it may be joint and not exclusive; and it may be proved by circumstantial evidence." Commonwealth v. Yazbeck, 31 Mass. App. Ct. 769, 774-775 (1992). "Possession implies 'control and power,' . . . exclusive or joint . . ., or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989) (citations omitted).

If there is no direct evidence of actual possession, as in this case, such as fingerprints, observation, or paraffin tests linking the defendant to the drugs, possession may be constructive and "inferred from proximity conjoined with knowledge; but the reasonableness of such an inference depends upon the circumstances." Commonwealth v. Brown, 50 Mass. App. Ct. 253, 258 (2000) (citation omitted). Mere presence and awareness of the drugs, however, is not enough to warrant an inference of the ability to exercise dominion and control over it. See Commonwealth v. Acosta, 416 Mass. 279, 284 (1993). See also Commonwealth v. Brown, 34 Mass. App. Ct. 222, 226 (1993). There must be additional significant evidence, an additional "'plus' factor of other incriminating evidence if a case is to reach the trier of fact," ibid., and "tip[ ] the scale in favor of sufficiency." Commonwealth v. Antonio, 45 Mass. App. Ct. 937, 938 (1998), quoting from Commonwealth v. Amparo, 43 Mass. App. Ct. at 923 (additional significant evidence must be introduced to warrant inference of agreement, intent and control). "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband], . . .

presence, supplemented by other incriminating evidence, "will serve to tip the scale in favor of sufficiency."" Commonwealth v. Acosta, 416 Mass. 279, 284 (1993) (citations omitted).

Here, the evidence falls far short of showing that Mr. Lambert "possessed," either actually or constructively, the evidence hidden in the apartment.   The Commonwealth's evidence that Mr. Lambert trafficked in cocaine on June 28 consisted of the following: at some time (the time was not given at trial) on June 28, 1999, Officer Cassillas observed a white Acura driven by Mr. Lambert pull up in front of 124 Mass. Avenue, and then saw Mr. Lambert and Dedlon Gelin exit the Acura and enter the multi-family house.  (II/23, 37, 99, 101).  At some point thereafter (there was no testimony how long after), Patrolman Lawrence contacted Junior via cell phone and arranged to buy another six pieces of crack cocaine, he drove to 124 Mass. Avenue with pre-recorded buy money, was approached by Dedlon Gelin, drove to an area where Westford Circle meets Westford Avenue, and made the exchange of crack for cash with Dedlon Gelin, immediately after which other officers stopped the vehicle and arrested Dedlon Gelin.  (I/70-72).

Just as the police had never seen Mr. Lambert participate in any of the previous distributions (by the woman on May 24, and Dedlon Gelin three times after that), the police did not see Mr. Lambert at all during the drug purchase on June 28.  (I/89-90).  Furthermore, there was no evidence to suggest that Dedlon Gelin obtained the six small rocks of cocaine from the apartment to sell them to Patrolman Lawrence, or whether he already had those rocks on him when he arrived at 124 Mass. Avenue earlier that day.  And  there is certainly no evidence from which it could be inferred that Mr. Lambert knew that Dedlon Gelin possessed six small rocks of cocaine when he left the apartment to sell them to Patrolman Lawrence.

After Dedlon Gelin's arrest, Sergeant Meleady went to the rear door of 124 Mass. Avenue and found Mr. Lambert leaving the third floor apartment. (I/108). There was no evidence that Mr. Lambert had any knowledge that Dedlon Gelin had just been arrested, there was no evidence that Dedlon Gelin knew the police were on their way to 124 Mass. Avenue, and there was no evidence that Mr. Lambert was attempting to flee the apartment or in any way resisted or otherwise failed to completely cooperate with Sergeant Meleady, who pat-frisked Mr. Lambert for weapons and hand-cuffed him while other officers secured the apartment. (109-111). In addition, there was no evidence that any personal effects found on Mr. Lambert at the time of his seizure suggested that he was in any way involved in the drug trade, and the Commonwealth presented no evidence that Mr. Lambert possessed a key to the apartment. See Commonwealth v. Brown, 34 Mass. App. Ct. at 226 (evidence insufficient where, among other things, the defendant "had no key to the premises").

In these circumstances, therefore, the only evidence the Commonwealth presented to support a trafficking indictment must be the evidence found inside the third-floor apartment at 124 Mass. Avenue  However, even this evidence fails to meet the Jackson v. Virginia standard where the Commonwealth produced no evidence to support a finding that Mr. Lambert had any knowledge that the evidence hidden in the apartment was there, no evidence that he had any interest in the apartment or the contents of the apartment, and no evidence that Mr. Lambert was in any way involved in the drug trade, other than the equivocal fact that Mr. Lambert's wallet was found on top of a dresser in the apartment. See, e.g., Commonwealth v. Amparo, 43 Mass. App. Ct. at 923-924 (insufficient evidence of constructive possession where defendant was present, had beeper, and attempted to flee, because there was no evidence

defendant had interest in apartment, drugs were not in plain view, and no drugs were found on defendant's person).

Much more significant than finding Mr. Lambert's wallet on top of a dresser in the apartment is the complete failure of the Commonwealth to present any of the customary evidence that is typically used to support a constructive possession case. For example, the Commonwealth presented no evidence as to who owned or rented the apartment, a crucial fact since it is undisputed that the police found Steve Charles and another person in the apartment (I/109, 111), and Dedlon Gelin had recently been there, yet the apartment had only two bedrooms – strongly suggesting that two or more of them were just visiting. The fact that the Commonwealth presented no evidence that Mr. Lambert owned or leased the apartment, therefore, weighs heavily in his favor. See Commonwealth v. Caterino, 31 Mass. App. Ct. at 689 (no evidence that the defendant rented, occupied, spent a great deal of time at or exercised control over the apartment or its contents); Commonwealth v. Schmieder, 58 Mass. App. Ct. 300, 303 (2003) (in assessing a defendant's control over the area where contraband is found, evidence that the defendant "rented, occupied, spent a great deal of time at or exercised control over" a dwelling is relevant). See also Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426 (1985) ("[I]t would have been a better practice for the Commonwealth to introduce direct evidence that LaPerle resided in the apartment").

Similarly, and just as curiously, is the fact that although the Commonwealth presented evidence that men's clothing and men's shoes were found in the dressers and closets, it completely failed to produce any evidence that a single piece of clothing or a single pair of shoes belonged to Mr. Lambert, or might even fit Mr. Lambert. See Commonwealth v. Navarro, 39 Mass. App. Ct. at 169 (highlighting fact that no evidence was presented linking

clothes in apartment to the defendant); Commonwealth v. Brown, 34 Mass. App. Ct. at 226

(evidence insufficient where, among other things, none of the furniture or other contents

seemed to be the defendant's").[2]  The Commonwealth also failed to present any evidence that

Mr. Lambert possessed at the time of his seizure large amounts of cash, a beeper, cell phone,

or drug paraphernalia, things which might indicate some participation in drug-dealing. See,

e.g., Commonwealth v. Brzezinski, 405 Mass. at 410 (carrying of large amounts of cash has

been associated with drug dealing).  In addition, the Commonwealth presented no evidence

that Mr. Lambert's voice was the same voice as the man on the cell phone who identified

himself to Patrolman Lawrence as Junior. See Commonwealth v. Brown, 34 Mass. App. Ct. at

227 ("The Commonwealth's evidence did not identify Brown's voice as one of those heard

when the police made drug purchases from the apartment").

Indeed, the Commonwealth's proof is so lacking, it cannot be said that the

Commonwealth proved by even circumstantial evidence that Mr. Lambert had any idea that

there were drugs hidden in the apartment, evidence which, even when presented, cannot alone

sustain a conviction.  See generally Commonwealth v. Cruz, 34 Mass. App. Ct. 619, 623

(1993) ("Behavior tending to show that the defendant knew of the presence of drugs in the

apartment or that he was guilty of some offense is not sufficient, by itself, to prove that he had

the ability and intent to control the drugs").  See also Commonwealth v. Amparo, 43 Mass.

App. Ct. at 923 ("Moreover, the drugs found were not in plain view but rather were hidden . . .

---

[2] That is particularly so with regard to the evidence seized in the back bedroom (Mr. Lambert's
wallet was found on top of the dresser in the front bedroom), where there was nothing to
connect him to the back bedroom. See, e.g., Commonwealth v. Rivera, 31 Mass. App. Ct. at
556 (although there was "ample circumstantial evidence" that defendant was in constructive
possession of drugs found in one bedroom, "there was no evidence that the defendant had the
intent or ability to exercise dominion or control over any of the drugs in [another] bedroom").

. The police did not find any drugs on the defendant's person"). The Commonwealth proved only that Mr. Lambert was present in the apartment on two occasions, but it never even proved that he was ever aware that drugs or drug paraphernalia were being hidden there, which is highly significant where it is well-settled that "[p]resence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance." Commonwealth v. Navarro, 39 Mass. App. Ct. 161, 168 (1995). Rather, presence – even where coupled with awareness, which is lacking here – still requires a "plus" factor of other incriminating evidence if a case is to reach the trier of fact. See Commonwealth v. Brown, 34 Mass. App. Ct. at 226 (reversing where evidence proved only presence and awareness, but did not include any "plus" factor where the "only 'plus' factors to which the government points are that Brown said she lived in the apartment and had some personal effects and papers there. The duration of her stay, however, was not established, nor was anything established in the government's case about her connection with the person who controlled the apartment. . . . Her personal identification papers were such as one might expect her to have readily available"). Compare Commonwealth v. DeJesus, 48 Mass. App. Ct. 911, 911-912 (1999) (pointing to such "plus" factors as the defendant's hanging out the window and looking up and down the street tends to prove that he was acting as a lookout; the assembly of four men in a rear bedroom as the police bashed their way in tends to prove that they were engaged in the joint purpose of protecting or secreting their stash of heroin; the defendant was gathered with the other occupants in a small bedroom in which he was surrounded by drugs, cash, and packaging materials, suggests a close connection between him and the heroin sales operation; drug sales had been conducted over a period of time with

several buyers while the defendant was in the apartment and, therefore, a witness to those transactions).

The Commonwealth presented only one piece of evidence that could be argued would provide some evidence that Mr. Lambert lived in the apartment: they found his wallet on top of the dresser in the front bedroom. (I/89, 113, 115). The fact that Mr. Lambert's wallet was found on top of the dresser, however, falls far short of satisfying the <u>Jackson v. Virginia</u> standard in light of the many factors set forth above tending to demonstrate that Mr. Lambert was nothing more than a visitor to the apartment who knew nothing of any drug activity taking place there. But perhaps most importantly in this case, the fact that there was no evidence of drug trafficking (or even possession) out in the open in the apartment so that a visitor (such as Mr. Lambert) could be said to have knowledge that there were any drugs in the apartment weighs most heavily in his favor. See also <u>Commonwealth v. Amparo</u>, 43 Mass. App. Ct. at 923 (although defendant fled when police broke in, no evidence of possession where drugs were not in plain view).

It cannot be doubted that the Commonwealth failed to present evidence to justify an inference that Mr. Lambert was even aware of the presence of the hidden cocaine, a powerful factor in Mr. Lambert's favor. See <u>id</u>. The radio scanner was found <u>inside</u> the dresser in the front bedroom; the bag with a single chunk of crack cocaine was found <u>inside</u> the pocket a pair of pants hanging from a hook on the back of the closet door; the four small rocks of crack were found <u>inside a boot</u> that was located in the closet; and hidden inside a black sock, which itself was hidden under the carpet underneath the dresser, were the 85 grams of cocaine. (II/8, 11, 53, 55-57, 73, 82, 91-92)). In the kitchen the police found some baggies and two digital

scales <u>inside the closets</u>, and in the back bedroom nine bags of powder were found hidden <u>inside</u> the pocket of a shirt hanging inside the closet. (I/136-137; II/8, 10).[3]

Even when viewed in the light most favorable to the Commonwealth, the evidence in the instant case merely showed that Mr. Lambert was present in the apartment at the time the police secured it, and that he placed his wallet on top of the dresser in the front bedroom, a fact that is not surprising since the police officers testified that there were only three rooms in the apartment, a kitchen and two bedrooms, therefore it is reasonable to expect a visitor to sometimes make himself comfortable in one of the two bedrooms, particularly where the police did not present evidence that the kitchen was an eat-in kitchen or was large enough for visitors to congregate in.

In these circumstances the trial judge should have allowed Lambert's motion for a required finding of not guilty. The fact that Mr. Lambert's wallet was found on top of a dresser in one of the only rooms he could be visiting was equivocal at best, and falls far short of satisfying the Commonwealth's burden. See <u>Commonwealth v. Schmieder</u>, 58 Mass. App. Ct. 300, 304 (2003) ("The Commonwealth contends that the materials seized from the defendant's pocketbook - along with certain telephone messages - demonstrate the defendant's involvement in the sale of drugs and therefore support the inference that the defendant possessed the drugs found at the premises. We disagree. The evidence found in the defendant's pocketbook (cash, a pager, and a list of telephone numbers) was equivocal at best in its relationship to drug - dealing activity"). There was simply no evidence that could be said to have been based on more than mere conjecture that Mr. Lambert possessed the drugs hidden in the apartment, or had some meeting of the minds with Dedlon Gelin, Steve Charles,

---

[3] A firearm was also recovered from the back bedroom, but there was no testimony presented

or any other unnamed principal who did in fact possess those hidden drugs. See

Commonwealth v. Meehan, 33 Mass. App. Ct. 262, 264 (1995)(joint venture not supported

where police found large amount of cash in defendant's crotch area and a cuff sheet, which he

attempted to conceal when searched, because there was no evidence of a nexus between the

defendant's activities and the cocaine found on the principal).

Other than his wallet, which had apparently been innocently placed on top of the

dresser, the police did not find any personal belongings of Mr. Lambert in or connecting him

with the apartment; the police did not find any drugs, drug paraphernalia, or large sums of cash

out in the open where a visitor would be alerted to their presence; the police did not find any

large sums of cash, beepers, or cell phones on Mr. Lambert that might connect him with illegal

activity; the police offered no testimony that Mr. Lambert's voice was the voice of "Junior"

heard over the telephone; the Commonwealth presented no evidence as to who owned or

leased the apartment; and the Commonwealth presented no evidence that Mr. Lambert tried to

flee when he was seized by the police, and offered no incriminating statements by him after his

seizure and subsequent arrest.

As these circumstances demonstrate, there was far less evidence of possession in this

case than in cases finding that evidence of possession was sufficient. Indeed, the paucity of the

evidence in this case is perhaps even more apparent when it is compared to that in other cases

in which the evidence was found to be sufficient to support a conviction. For example, in

Commonwealth v Brown, 34 Mass. App. Ct. at 225, the police entered the suspect apartment

to find one defendant "in the bathroom, soaked, and flushing a plastic bag down the toilet. She

was standing next to a sink with the water running and a bathtub which had fresh water

---

as to where in the back bedroom the gun was found. (I/136-137; II/8, 10).

deposits in it." In addition, a marked bill used to conduct a buy just 30 minutes earlier was found at her feet and in her pants was $343 in cash and cocaine. Id. at 226. When arrested, she gave the police a false name. Based on those facts, the Court held that it could reasonably be inferred that she was disposing of drugs and was involved in the joint venture, despite the fact that she did not reside in the apartment. Id.

But more similar to Mr. Lambert's situation is that of another defendant in the Brown case, whose conviction was reversed. Id. On that defendant, the police found no cocaine, drug paraphernalia, or cash. She also had no key to the premises, and none of the furniture or other contents seemed to be hers. Id. Despite the fact that the defendant said she lived in the apartment, the court ruled that the evidence was insufficient to support a conviction: "Presence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance." Id. at 226-227 ("The only 'plus' factors to which the government points are that Brown said she lived in the apartment and had some personal effects and papers there. The duration of her stay, however, was not established, nor was anything established in the government's case about her connection with the person who controlled the apartment. Her personal identification papers were such as one might expect her to have readily available. The Commonwealth's evidence did not identify Brown's voice as one of those heard when the police made drug purchases from the apartment. In the final analysis, the Commonwealth proved only presence and awareness").

Thus, unlike cases where the Commonwealth is found to have presented sufficient evidence, some "plus" factor, in this there is simply no smoking gun, no "plus" factor to add to the harmless fact that Mr. Lambert's wallet was found "in a place where it was readily available," as one might expect, on top of the dresser in a room that was apparently not his and

where no drugs were apparent.[4]   See id. at 227 (evidence insufficient where, among other things, defendant's "personal identification papers were such as one might expect her to have readily available").   Contrast Commonwealth v. Pratt, 407 Mass. 647, 651-652 (1990) (evidence was sufficient to prove that defendant was in possession of contraband found in small one-room cottage and on property surrounding cottage; there was evidence that defendant resided with her husband in cottage, that drugs, drug paraphernalia and drug transaction list were in plain view in cottage, and that drugs found on property were packaged in identical manner and were of same type and "brand" as those in cottage); Commonwealth v. Brzezinski, 405 Mass. at 410 (defendant retreated into closet where drugs were found); Commonwealth v. Frias, 47 Mass. App. Ct. 293, 297 (1999) (police entered premises and saw defendants counting cash and within reach of drugs); Commonwealth v. Antonio, 45 Mass. App. Ct. at 938 (sufficient circumstantial evidence of constructive possession even though no drugs found in bedroom where defendant's passport, photographs, jewelry and airline tickets were in close proximity to forty-four plastic bags of cocaine, razor bags and clear plastic sandwich bags, the defendant attempted to flee, the apartment was sparsely furnished and the door was fortified with a bar, brackets, and several locks); Commonwealth v. Adames, 41 Mass. App. Ct. 14, 17 (1996)(police conducted an undercover buy from an apartment suspected to be the site of numerous drug sales, using a marked bill covered with an invisible powder, searched the apartment the next day finding four men, including the defendant, who

---

[4] During argument at the close of the Commonwealth's case, the prosecutor emphasized the importance of finding one of Junior's business cards in Mr. Lambert's wallet. While that single business card in Mr. Lambert's wallet might be evidence that Mr. Lambert had met Junior and perhaps even telephoned Junior for drugs, a single business card is not evidence that Mr. Lambert was Junior, or was in business with Junior, as would perhaps, numerous business cards being found in Mr. Lambert's wallet, which might suggest that Mr. Lambert was handing Junior's card out to people.

powder residue on his hands and $304 in his person); Commonwealth v. Villar, 40 Mass. App.

Ct. 742, 747 (1996) (constructive possession because defendant opened door to apartment,

had key to apartment, had personal papers and clothes in various locations around the

apartment, defendant wrote check to landlord, defendant was standing next to the person

holding several bags of cocaine, cocaine and paraphernalia were found in kitchen on a shelf);

Commonwealth v. Rivera, 31 Mass. App. Ct. at 556-557 (defendant's belongings in closet

where canister of cocaine was found); Commonwealth v. Yazbeck, 31 Mass. App. Ct. at 775

(constructive possession of drugs in basement closet was proved where, in addition to

defendant's presence, he had purchased marijuana from undercover police one week earlier at

the same location, defendant had drugs on him, defendant was at house two other occasions

when police visited, defendant used address of house for his firearm, and defendant's

possessions were all over the house); Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 915

(1986) (finding that defendant was in possession of marihuana was sufficiently supported by

evidence marihuana was found on dresser in bedroom containing other property of defendant,

including "roach clip," on which defendant's name was soldered, though defendant did not live

alone in house);

 "It is not enough for the appellate court to find that there was some record evidence,

however slight, to support each essential element of the offense." Commonwealth v. Armand,

411 Mass. at 170, quoting from Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

Here, the evidence falls far short of proving that Mr. Lambert possessed the drugs. Indeed, the

evidence does not even demonstrate that Mr. Lambert was even aware of the presence of the

hidden cocaine in the apartment. In these circumstances, the conviction on the trafficking

indictment (No. 99-1900) must be reversed and the indictment dismissed. See, e.g.,

Commonwealth v. Amparo, 43 Mass. App. Ct. at 924; Commonwealth v. Caterino, 31 Mass. App. Ct. at 690.

    C.    <u>Where The Evidence Was Insufficient To Prove That Mr. Lambert Trafficked In Cocaine At 124 Mass. Avenue On June 28, 2003, The Indictment For Trafficking In A School Zone Must Also Be Dismissed.</u>

Where, as set forth above, the Commonwealth's evidence falls far short of satisfying the <u>Jackson v. Virginia</u> standard on the indictment alleging that Mr. Lambert trafficked in cocaine on June 28, 2003, the conviction on the indictment alleging that he violated the controlled substance laws on June 28, 2003 while within 1,000 feet of a school, see G.L. c. 94C, § 32J, must also be reversed, and the indictment dismissed. See <u>Commonwealth v. O'Toole</u>, 52 Mass. App. Ct. 183, 188 (2001) (reversing school zone indictment where there was insufficient evidence to support conviction on indictment alleging distribution).

                    Respectfully submitted,
                    Gregory Lambert,
                    by his attorney,

                    Thomas C. Foley,
                    USDC No. Pending
                    Attorney at Law
                    P.O. Box 2187
                    South Hamilton, MA 01982
                    (978) 239-7003