```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS


GREGORY LAMBERT,                )
     Petitioner,                )
                                )     CIVIL ACTION NO.
     v.                         )     04-12694-DPW
                                )
MICHAEL A. THOMPSON,            )
     Respondent.                )
```

                    MEMORANDUM AND ORDER
                        June 7, 2005

Gregory Lambert ("Petitioner") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state court convictions on three counts of trafficking and distributing cocaine and one count of distributing cocaine within 1000 feet of a school. He contends that the evidence was insufficient to support the convictions. Respondent has moved to dismiss the petition. Finding not unreasonable the state courts' determination that the evidence was sufficient to support the convictions, I will grant that motion.

## I. Background

The reviewing federal court in a state habeas corpus proceeding must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1) (2000). In order to rebut this presumption, the petitioner must establish the contrary by clear and convincing evidence. See id.

The underlying facts of this case, which are not in dispute,

were developed in the evidence submitted during Petitioner's jury waived trial.

From May to June 1999, the Springfield Police Department conducted five purchases of crack cocaine through undercover narcotics patrolman Marcus Lawrence from an individual known to him as "Junior." In each sale, Officer Lawrence phoned "Junior" to purchase cocaine and was later met by a drug mule who exchanged the drugs for pre-recorded buy money.

On May 24, 1999, the Petitioner was observed by police surveillance officers at 221 Orange Street where the first of the five drug sales took place. The surveillance officers saw the Petitioner on the second floor porch of 221 Orange Street watching the woman whom "Junior" had designated to complete the arranged sale. The Petitioner watched her approach Officer Lawrence's car and walk to the back of the building where the exchange of drugs for money ultimately took place. In addition, the Petitioner looked up and down the street and lingered for some time after the sale. This day's events led to two indictments, one count for distributing cocaine and one count for distributing within 1000 feet of a school. At trial, the trial judge granted the Petitioner's Motion for a Required Finding of Not Guilty as to both May 24 charges.

On May 25, 1999, Officer Lawrence arranged with "Junior" to buy cocaine in front of 124 Massachusetts Avenue. The officer was met there by a young male, later identified as Dedlon Gelin,

who made the sale.  The events of May 25, 1999 led to an indictment for the distribution of cocaine.  The trial judge acquitted the Petitioner on the May 25 count.

On June 1, 1999, Officer Lawrence arranged another purchase with "Junior" by cell phone and was met once again by Gelin at 124 Massachusetts Avenue.  Gelin directed Officer Lawrence to drive to the area of Dunmoreland Street where he made the sale.  Officers shortly thereafter intercepted Gelin, the Petitioner, and one or two other individuals traveling in a taxi from 124 Massachusetts Avenue to 221 Orange Street where Gelin, who had drugs in his possession, but none of the others was arrested.  Gelin was bailed out later that day.

On June 2, 1999, Officer Lawrence again contacted "Junior" by cell phone.  "Junior" directed Officer Lawrence to go to 124 Massachusetts Avenue where Gelin met him to complete the sale of five rocks of cocaine at fifty dollars a piece.

The events of June 1 and June 2, 1999 led to two indictments on separate counts of cocaine distribution for which the trial judge found the Petitioner guilty.

On June 28, 1999, Officer Lawrence phoned "Junior" and arranged the last purchase of cocaine, at 124 Massachusetts Avenue.  Another undercover officer, parked at 124 Massachusetts Avenue, observed the Petitioner drive up with Gelin in the passenger's seat.  Both men entered the building.  Later, Officer Lawrence arrived, and Gelin came out and got into his car.  They

drove to the end of Massachusetts Avenue at Westford Circle, where they made the transaction. Surveillance officers intercepted Officer Lawrence's car and arrested Gelin.

Acting on the basis of information not fully disclosed in the trial record, a police sergeant then entered 124 Massachusetts Avenue with a search warrant to secure the third floor apartment. As he came up the rear stairs, the Sergeant encountered the Petitioner coming out of the back door of the apartment. The Sergeant handcuffed and searched the Petitioner but found no weapons or drugs on him. Other officers entered the apartment and secured two other individuals. Within the kitchen cabinets, digital scales and packaging materials were found. Cell phones and beepers were also found inside the apartment.

On a dresser in the front bedroom of the apartment, officers found the Petitioner's wallet, containing his photo I.D. and a business card with the name "Junior" and the phone number Officer Lawrence had called in connection with his undercover buys on it, together with certain of Petitioner's personal papers. Inside a drawer was a police scanner. Men's clothing and shoes were strewn about the room, and officers found a bag containing a 4.7-gram chunk of cocaine in the pocket of a pair of pants hanging on the closet door. Officers recovered a black sock containing an 85-gram rock of cocaine with 65.2% purity, wholesale valued at approximately $2400, under the carpet beneath the dresser.

The events of June 28, 1999 led to two indictments, one

count for trafficking cocaine with a net weight of 28 to 100 grams, and one count for cocaine distribution within 1000 feet of a school or park zone.  The trial judge found the Petitioner guilty on both June 28 charges.

On appeal, the Massachusetts Appeals Court affirmed the Petitioner's convictions on the four indictments.  <u>Commonwealth v. Lambert</u>, 61 Mass. App. Ct. 1106 (2004).  The Supreme Judicial Court denied his application for further appellate review on June 30, 2004.  <u>Commonwealth v. Lambert</u>, 442 Mass. 1104 (2004).  Petitioner thereafter timely filed the instant petition in this court.

## II. Discussion

The Petitioner raises only one claim, that the evidence on record was insufficient to support his state court convictions.  Petitioner contends the Commonwealth presented no evidence that he is the drug dealer "Junior" or that he was otherwise involved in any of the drug distributions for which he was convicted.  In particular, the Petitioner contends that the evidence seized at the apartment, where drugs and paraphernalia were found, falls short of supporting a conviction of trafficking because it fails to demonstrate that he had any connection with or knowledge of the cocaine found in the apartment.

**A. Standard of Review**

Under 28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may grant habeas relief only if the state court's adjudication of a petitioner's claim resulted in a decision "contrary to, or involved an unreasonable application of" established Federal law.  See Hurtado v. Tucker, 245 F.3d 7, 15 (2001) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Evaluating whether the evidence before a state court was sufficient to support a conviction involves the "unreasonable application," rather than the "contrary to," prong of § 2254(d)(1).  See id.

The legal standard provides that evidence is sufficient if it would persuade a reasonable fact finder of the existence of every element of a criminal offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 207, 316 (1979).  A state court conviction that fails to meet this threshold is an unconstitutional deprivation of a defendant's right to due process.  See Jackson, 443 U.S. at 318.  However, to be unconstitutional, a state-court decision must be "objectively unreasonable" and not merely incorrect or erroneous.  See Williams, 529 U.S. at 391.  In making its analysis, a reviewing federal court does not weigh the evidence; rather, it "must accept the jury's resolution of the evidence as long as it is within the bounds of reason."  Kelly v. Roberts, 998 F.2d 802, 808 (10th Cir. 1993).

**B. Analysis**

The evidence developed in connection with the Petitioner's arrest on June 28, 1999 provides an adequate foundation for the ultimate factual determination of guilt on all the counts of conviction.

Both the trial judge as finder of fact and the Appeals Court on appeal held that the evidence, and reasonable inferences therefrom, were sufficient to establish that the Petitioner constructively possessed the 85 grams of cocaine the police found under the carpet beneath the front bedroom dresser for purposes of distribution.  Lambert, 61 Mass. App. Ct. 1106.

The evidence supported the conclusion the Petitioner constructively possessed cocaine.  A finding of drug possession requires that a defendant know of the presence of the controlled substance and have "the ability and intention to exercise dominion and control over it."  Hurtado, 245 F.3d at 12 (quoting Commonwealth v. Cruz, 34 Mass. App. Ct. 619, 621 (1993)). Moreover, "[p]ossession 'may be constructive rather than actual; it may be joint and not exclusive; and it may be proved by circumstantial evidence.'"  Commonwealth v. Acosta, 416 Mass. 279, 284 (1993) (quoting Commonwealth v. Yazbeck, 31 Mass. App. Ct. 769, 775 (1992)).  A defendant's presence where drugs are found is a contributing element to a circumstantial case.  Of course, presence alone "is not enough to support an inference of

possession." Commonwealth v. Bienvenu, No. 04-P-420, 2005 Mass. App. LEXIS 521, at *12 (Mass. App. Ct., June 2, 2005) (slip op.). The Petitioner's presence supplemented by other incriminating evidence -- a "plus factor" -- however, may be sufficient. Id. (citing Commonwealth v. Ortega, 441 Mass. 170, 174 (2004); Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 149 (1999)).

    Here, police apprehended the Petitioner as he was leaving through the back door of the third-floor apartment at 124 Massachusetts Avenue where the cocaine was found. That location was apparently the source of the drugs sold in the undercover transactions. In addition to his presence at the apartment, other incriminating evidence supporting Petitioner's convictions included the discovery of the Petitioner's wallet, containing a business card for "Junior," and Petitioner's papers on the dresser in the front bedroom. Taken together with the Petitioner's prior coming and going from this apparent stash house at 124 Massachusetts Avenue, these facts viewed most favorably toward the prosecution, Jackson, 443 U.S. at 319, reasonably lead to the inference that the Petitioner was not an unknowing "visitor" but rather had a substantial connection with the apartment and the drugs found there.

    The Petitioner contends that under the case law the evidence seized at the apartment did not demonstrate that he had any connection with, or knowledge of, the cocaine found in the apartment. A fair reading of cases, even those cited by the

Petitioner, points to a contrary conclusion; the presence of personal belongings or effects in a room where drugs were located constitutes a well-recognized "plus" factor in support of a finding of possession.  See Commonwealth v. Navarro, 39 Mass. App. Ct. 161, 169 (1995) (citing Commonwealth v. Caterino, 31 Mass. App. Ct. 685, 689 (1991), and cases cited); Commonwealth v. Brown, 34 Mass. App. Ct. 222, 226 (1993) (citing Commonwealth v. Pratt, 407 Mass. 647, 652-54 (1990) (proximity of defendant and her personal belongings allowed inference of possession); Commonwealth v. Rodriguez, 16 Mass. App. Ct. 944, 945-46 (1983) (defendant seen using bedroom from which heroin was seized); Commonwealth v. Rarick, 23 Mass. App. Ct. 912 (1986) (marihuana found in defendant's bedroom among personal effects)).

The trial judge could reasonably conclude from the weight of the evidence that Petitioner constructively possessed 85 grams of cocaine in the bedroom where his belongings were found.

The evidence not only supports a finding that the Petitioner constructively possessed the cocaine in the apartment at 124 Massachusetts Avenue, but also the inference that he was engaged in a ongoing joint venture to sell drugs to the undercover officer, at a minimum, with Dedlon Gelin from that location. Joint venturers, of course, must be shown to share the requisite mental state for the crime and to have assisted intentionally with its commission. Commonwealth v. Saez, 21 Mass. App. Ct. 408, 410 (1986); see also Commonwealth v. James, 30 Mass. App.

Ct. 490, 499 (1991). Police observed Petitioner at the location of the first sale arranged with "Junior" at 221 Orange Street on May 24, 1999. The Petitioner got into a taxi with Gelin from 124 Massachusetts Avenue after a drug sale on June 1, 1999. In addition, the Petitioner drove Gelin to a drug sale at 124 Massachusetts Avenue on June 28, 1999.[1] Furthermore, surveillance recorded the Petitioner going to and leaving from the 124 Massachusetts Avenue stash house on several occasions. This evidence, considered with the fact that sales made by Gelin were arranged through a third party named "Junior," whose card containing the number Officer Lawrence used to arrange the controlled buys was found near Petitioner's wallet, lends strong support to the inference that Gelin and the Petitioner and perhaps others (one of whom responded on the phone as "Junior") were engaged in an ongoing joint enterprise to deal drugs.[2] See

---

[1] Petitioner contends that he and Gelin arrived at 124 Massachusetts Avenue before Officer Lawrence placed the call to "Junior" arranging the drug sale on June 28, 1999, a sequence of facts that may diminish the strength of any inference that Petitioner knew of, or orchestrated, the drug sale but does not deprive it of all force. However, the trial record does not clearly indicate whether the officer's call preceded or followed their arrival at 124 Massachusetts Avenue, or whether the impending drug sale was the reason for their travel.

[2] The Commonwealth did not need to press the contention that the Petitioner was in fact "Junior" to establish Petitioner's participation in the crimes of conviction. Petitioner's participation in a joint venture is adequately made out by his constructive possession of the drugs in the apartment and his involvement with Gelin's activities; the existence of a "third party named 'Junior'" and/or "perhaps others" simply adds to the cast of characters without directly affecting the essential

James, 30 Mass. App. Ct. at 499.

Petitioner, in his discussion of the evidence, views the events of each drug sale in isolation, offering Petitioner's absence during each actual drug trade as proof of his innocence. The proper approach for measuring the convictions' "objective unreasonableness," however, is to evaluate the "totality of the evidence." See Hurtado, 245 F.3d at 18 (setting forth "totality of the evidence" as a guideline for reviewing sufficiency).

It is apparent that the trial judge sorted through and weighed the evidence in a discriminating fashion by evaluating the totality of the evidence. His decision to order acquittals on the May 24 and May 25 transactions demonstrates that he looked to evidence of engaged -- as opposed to vicarious or observatory -- association between the Petitioner and the actual distributor of drugs before drawing the ultimate conclusion regarding the Petitioner's participation in the joint venture. This is precisely the type of considered fact finding to which federal courts in habeas proceedings involving state convictions are obliged to show deference. I find nothing unreasonable in the trial judge's evaluation of the underlying evidence in reaching his ultimate factual conclusion that the Petitioner was guilty of certain (and not guilty of other) of the charges brought against him.

---

validity of the charges.

The Appeals Court found that certain "plus factors" -- beyond the Petitioner's mere presence at the scene -- supported that ultimate conclusion. The defendant's wallet, personal papers and "Junior's" business card were found on the dresser and a police scanner was also there. Moreover, the size and purity of the 85-gram chunk of cocaine, and the sales of drugs apparently from 124 Massachusetts Avenue to the undercover officer all reinforced the conclusion that the cocaine was under his control and intended for illegal distribution. Inferences from this evidence and his earlier activities pointed to the Petitioner as a joint venturer in the distribution sufficient to substantiate the guilty findings on the counts of conviction.

Viewing the evidence in the light most favorable to the prosecution, I find this conclusion reasonable. While "'a conviction [cannot] rest upon the piling of inference upon inference or conjecture and speculation,'" Navarro, 39 Mass. App. Ct. at 168 (alteration in original) (quoting Commonwealth v. Armand, 411 Mass. 167, 170 (1991)), the evidence in the record was sufficient to draw the "reasonable and possible" inferences that the Petitioner constructively possessed cocaine and engaged in a joint enterprise to distribute it, id. at 168 (stating that inferences drawn need not be "necessary inferences" but merely "reasonable and possible")(quoting Commonwealth v. Merrick, 255 Mass. 510, 514 (1926)).

I conclude that on the "totality of the evidence" the Appeals Court's affirmance was not "objectively unreasonable" and that the evidence of record was sufficient to support the convictions.

Accordingly, the respondent's Motion to Dismiss is hereby GRANTED.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE